IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,361

In the Matter of LAWRENCE E. SCHNEIDER,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed November 9, 2017. Published censure.

*Penny Moylan*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Lawrence E. Schneider*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Lawrence E. Schneider, of Topeka, an attorney admitted to the practice of law in Kansas in 1977.

On September 7, 2016, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on October 3, 2016. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 8, 2016, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.3 (2017 Kan. S. Ct. R. 290) (diligence), and 1.4(b) (2017 Kan. S. Ct. R. 291) (communication).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

1

*"Findings of Fact*

. . . .

"7. Throughout the respondent's career, he has been a solo practitioner. Over time, his practice has become focused primarily in the area of bankruptcy law.

"8. In April, 2011, the Kansas legislature enacted K.S.A. 60-2315, which allows a debtor in bankruptcy to claim, as exempt, federal and state earned income tax credits.

"A.J. and M.J.

"9. On January 29, 2013, the respondent filed a chapter 7 bankruptcy petition on behalf of A.J. and M.J., husband and wife. At that time, the respondent's practice was to not list a possible federal and state earned income tax credit exemption on the schedule C to the bankruptcy petition. Rather, the respondent's practice was to amend the schedule C if a client received a federal or state earned income tax credit exemption. The respondent acknowledges that his practice was not the best practice. However, the respondent points out that a debtor may amend a schedule any time prior to discharge.

"10. In this case, as a result of the respondent's practice, the respondent did not list the debtors' federal and state earned income tax credit exemption on the schedule C filed with the chapter 7 bankruptcy petition.

"11. On April 8, 2014, the bankruptcy trustee filed a motion for the debtors to turn over their 2012 income tax refunds in the amount of $2,999.50. The respondent failed to file a response to the motion. On May 15, 2014, the court granted the trustee's motion and ordered the debtors to provide the trustee with their income tax refund in the amount of $2,999.50.

"12.    On May 17, 2014, the respondent filed an amended schedule C to the bankruptcy petition. The amended schedule C listed $2,991.00 as exempt federal and state earned income tax credit.

"13.    The debtors did not pay the income tax refunds in the amount of $2,999.50 to the trustee as ordered by the court.

"14.    On July 1, 2014, the trustee filed a motion asking that the court order the debtors and the respondent to appear and show cause why the debtors should not be held in contempt for failing to comply with the court's May 15, 2014, order. The court issued an order to show cause.

"15.    The respondent and the trustee established a monthly payment plan and the respondent personally paid the $2,999.50 to the trustee in full.

"J.R. and I.R.

"16.    On June 24, 2013, the respondent filed a chapter 7 bankruptcy petition on behalf of J.R. and I.R., husband and wife. Again, based on his pattern and practice, the respondent did not list the debtors' possible 2013 federal and state earned income credit exemption on the schedule C to their bankruptcy petition. On March 20, 2014, the bankruptcy court entered a discharge order, discharging the debtors' debts.

"17.    On April 18, 2014, the bankruptcy trustee filed a motion requesting authority to allocate $1,994.52 of the debtors' $5,160.00 2013 federal and state income tax refund. On May 6, 2014, the respondent filed a response to the trustee's motion, arguing that $4,068.00 of the debtors' state and federal income tax refunds were exempt as earned income credit.

"18.    On May 9, 2014, the respondent filed an amended schedule C to the bankruptcy petition, listing $4,068.00 of the debtors' income tax refunds as exempt federal and state earned income credit. On May 15, 2014, the trustee filed an objection to the amended schedule C, arguing that the debtors' inexcusable delay in claiming the

3

exemption caused prejudice to the trustee and that the claimed exemption should therefore be denied as waived.

"19.    Later, the respondent and the trustee entered into a compromise and settlement whereby the debtors paid the trustee $500.00.

"C.C.

"20.    On July 19, 2013, the respondent filed a chapter 7 bankruptcy petition on behalf of C.C. Again, the respondent failed to list the debtor's federal earned income tax credit as an exemption on schedule C of the bankruptcy petition.

"21.    While the chapter 7 bankruptcy petition was pending, at the debtor's request, the respondent filed a second bankruptcy petition on behalf of the debtor. The second bankruptcy petition was filed under chapter 13 and was designed to provide the debtor with an avenue to keep his motor vehicle.

"22.    On November 25, 2013, the court entered an order in the chapter 7 bankruptcy proceeding discharging the debtor from bankruptcy.

"23.    On May 1, 2014, the chapter 7 trustee filed a motion to compel the debtor to turn over the 2013 income tax return so the trustee could pursue the bankruptcy estate's share of the federal income tax refund. The respondent did not object to the motion and, thereafter, on May 23, 2014, the court granted the motion to compel.

"24.    After receiving a copy of the debtor's 2013 federal income tax return which revealed that the debtor received a refund of $8,254.00, on June 12, 2014, the chapter 7 trustee filed a motion for the debtor to turn over $3,974.79, the estate's share of the refund. Again, the respondent did not object to the motion.

"25.    On June 26, 2014, the respondent filed an amended schedule C to the chapter 7 bankruptcy petition, claiming a $4,878.00 exemption for the federal earned income credit.

4

"26.     On July 7, 2014, the court granted the chapter 7 trustee's motion and the debtor was ordered to turn over $3,974.79, the estate's share of the federal income tax refund. The court did not deduct a *pro rata* share of the refund for the earned income credit. The respondent did not file a motion for reconsideration. Likewise, the respondent did not appeal or otherwise move to set aside the order.

"27.     On July 18, 2014, the chapter 7 trustee filed an objection to the amended schedule C, arguing that the debtor engaged in a pattern of inexcusable conduct. The trustee further argued that the debtor's delay constituted a waiver of the exemption. The respondent again failed to respond to the trustee's motion. On August 18, 2014, the court sustained the trustee's objection to the amended schedule C.

"28.     The debtor did not pay $3,974.79 of the 2013 federal income tax refund to the chapter 7 trustee. Rather, the debtor paid the chapter 13 trustee the income tax refund, less the earned income credit.

"29.     On September 3, 2014, the trustee filed an adversary proceeding to revoke the bankruptcy discharge and to obtain a judgment against the debtor for the amount of $3,974.79, plus interest and costs. The respondent filed an answer to the adversary proceeding on behalf of the debtor.

"30.     On November 3, 2014, the chapter 7 trustee served discovery on the respondent. The respondent drafted responses to the discovery requests. However, the respondent did not forwarded the discovery responses to the trustee. Because the trustee included requests for admissions and because the respondent failed to respond, the debtor was left with no factual or legal defense to the trustee's adversary complaint.

"31.     On January 6, 2015, the chapter 7 trustee filed a motion for partial summary judgment requesting revocation of the debtor's bankruptcy discharge and a monetary judgment in the amount of $3,974.79, plus interest and costs.

"32.     The respondent did not file a response to the chapter 7 trustee's motion for partial summary judgment. On February 5, 2015, the court granted the trustee's motion for partial summary judgment and entered judgment against the debtor in the amount of $3,974.79 plus interest and costs. Further, the court revoked the debtor's discharge. The respondent did not appeal or otherwise move to set aside the order and the resulting judgment against the debtor.

"33.     After the judgment was entered against the debtor, the respondent entered into a payment plan with the chapter 7 trustee and paid the judgment in full with his personal funds.

"34.     At the hearing on this matter, the respondent testified that he does not believe that the debtor has a complete understanding of the effect of having the chapter 7 bankruptcy discharge revoked.

"D.T.

"35.     On September 3, 2013, the respondent filed a chapter 7 bankruptcy petition on behalf of D.T. Again, the respondent failed to list the debtor's 2013 state and federal earned income credit as an exemption under schedule C of the Chapter 7 bankruptcy petition.

"36.     For tax year 2013, the debtor was entitled to receive income tax refunds totaling $5,746.00. On April 9, 2014, the trustee filed a motion for authority to allocate $3,549.75 of the debtor's 2013 income tax refunds.

"37.     On April 18, 2014, the respondent filed a response to the trustee's motion to allocate $3,549.75 of the debtor's income tax refund, arguing that $3,279.00 of the debtor's income tax refunds were exempt as earned income credit. That same day, the respondent filed an amended schedule C to the bankruptcy petition, listing $3,279.00 of the debtor's tax refunds as exempt earned income tax credits.

"38.     On May 15, 2015, the trustee filed an objection to the amended schedule C to the bankruptcy petition arguing that the debtor's inexcusable delay in claiming the exemption caused prejudice to the trustee. The trustee argued that the claimed exemption should be denied as waived. Later, the respondent entered into an agreement with the trustee and the debtor paid $500.00 to the trustee to satisfy the trustee's request.

"Disciplinary Complaint, Investigation, and Prosecution

"39.     On April 6, 2015, Judge Janice Karlin filed a complaint against the respondent regarding these cases. The respondent fully cooperated with the disciplinary investigation and prosecution.

"*Conclusions of Law*

"40.     Based upon the findings of fact, the hearing panel concludes that the respondent violated KRPC 1.3 and KRPC 1.4, regarding the respondent's representation of A.J., M.J., and C.C., as detailed below. The hearing panel concludes that there is not clear and convincing evidence to show that the respondent violated the Kansas Rules of Professional Conduct with regard to his representation of J.R., I.R., or D.T.

"KRPC 1.3

"41.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent A.J., M.J., and C.C. by failing to timely respond to motions and by failing to respond to discovery requests. The respondent provided explanations as to the futility of filing such responses on numerous occasions or reasons why such responses may not have been filed, [however] the failure to take such action resulted in loss of the opportunity to meaningfully contest the orders entered against his clients in those cases. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3.

7

"KRPC 1.4

"42.    KRPC 1.4(b) provides that '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' In this case, the respondent violated KRPC 1.4(b) when he failed to explain to C.C. the effect of the court's order revoking the bankruptcy discharge. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"43.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"44.    *Duty Violated*.  The respondent violated his duty to his clients to provide diligent representation and adequate communication.

"45.    *Mental State*.  The respondent negligently violated his duties.

"46.    *Injury*.  As a result of the respondent's misconduct, the respondent caused potential injury to his clients.

"47.    *Aggravating and Mitigating Factors*.  Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

8

a.  A Pattern of Misconduct.  The respondent repeatedly failed to respond to motions in bankruptcy cases. Accordingly, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

b.  Substantial Experience in the Practice of Law.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1977. At the time of the misconduct, the respondent has been practicing law for more than 35 years.

"48.  Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.  Absence of a Prior Disciplinary Record.  The respondent has not previously been disciplined.

b.  Absence of a Dishonest or Selfish Motive.  The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

c.  Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.  The respondent paid $2,999.50 to the trustee in the A.J. and M.J. bankruptcy and the respondent paid $3,974.79 to the trustee in C.C.'s bankruptcy case. The hearing panel concludes that the respondent timely made restitution which rectified the consequences of his misconduct.

d.  The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.  The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

9

e.      Previous Good Character and Reputation in the Community
Including Any Letters from Clients, Friends and Lawyers in Support of
the Character and General Reputation of the Attorney.  The respondent is
an active and productive member of the bar of Topeka, Kansas. The
respondent also enjoys the respect of his peers and generally possesses a
good character and reputation.

f.      Imposition of Other Penalties or Sanctions.  Even though the
court did not order him to do so, the respondent paid $6,974.29 on behalf
of his clients, which amounts to the imposition of another penalty. The
hearing panel is impressed with the respondent's payment of full
restitution on behalf of his clients.

g.      Remorse.  At the hearing on this matter, the respondent
expressed genuine remorse for having failed to timely respond to the
motions and for having failed to fully advise his client.

"49.      In addition to the above-cited factors, the hearing panel has thoroughly
examined and considered the following Standards:

'4.43      Reprimand is generally appropriate when a lawyer is negligent
          and does not act with reasonable diligence in representing a
          client, and causes injury or potential injury to a client.'

"*Recommendation*

"50.      The disciplinary administrator recommended a 3-month suspension.
Further, the disciplinary administrator also recommended that the respondent undergo a
hearing before a hearing panel prior to consideration of reinstatement. The respondent
argued that suspension seemed harsh, that his actions were the result of his negligence,
and not done knowingly.

10

"51.    Since the time of the misconduct, the respondent has made improvements to his practice to ensure that he timely responds to all motions filed. Additionally, in the 2 years between the misconduct and the hearing on the formal complaint, the respondent did not fail to respond to any additional motions. The hearing panel is convinced that the respondent's diligence issues have been resolved. To resolve the communication issue, the hearing panel urges the respondent to fully explain to C.C. the ramifications of the court's order revoking the discharge. The hearing panel also feels strongly that the respondent should notify the disciplinary administrator in writing confirming that he has rectified the previous failure to properly communicate with C.C., by fully explaining the ramifications of the court's order revoking the discharge. Nevertheless, while the hearing panel urges the respondent to take this corrective action, the hearing panel's formal recommendation, stated below, is not contingent upon the respondent's compliance with these steps.

"52.    Based upon the findings of fact, conclusions of law, and the significant mitigating evidence, the hearing panel unanimously recommends that the respondent be censured. The hearing panel further recommends that the censure be published in the Kansas Reports.

"53.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2017 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth

of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearings before the panel and this court for which he appeared. The respondent did not file exceptions to the panel's final hearing reports. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2017 Kan. S. Ct. R. 255). Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.3 (2017 Kan. S. Ct. R. 290) (diligence); and 1.4(b) (2017 Kan. S. Ct. R. 291) (communication), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, the office of the Disciplinary Administrator recommended a 3-month suspension from the practice of law and that respondent undergo a reinstatement hearing pursuant to Supreme Court Rule 219 (2017 Kan. S. Ct. R. 263). The respondent argued that suspension seemed harsh and that his actions were the result of negligence and not done knowingly. The panel recommended published censure.

At the hearing before this court, the attorney for the office of the Disciplinary Administrator reported that after the panel hearing she had twice contacted Hon. Janice Miller Karlin, United States Bankruptcy Judge, the complainant in this case. Judge Karlin was contacted to discern whether she had observed any continuing concerns with respondent's practice. Both times, Judge Karlin responded that she had not witnessed further concerns. Due to the panel's recommendation and the observation from Judge Karlin, the office of the Disciplinary Administrator recommended that respondent be disciplined by published censure. We agree with the recommendation of both the

12

Disciplinary Administrator and the panel, and we hold that respondent is to be disciplined by published censure.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Lawrence E. Schneider be and is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2017 Kan. S. Ct. R. 234), effective on the filing of this decision.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.